RECEIVED
AUG 22 2012
CHAMBERS OF
DENISE COTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD CONTINO

(In the space above enter the full name(s) of the plaintiff(s).)

Docket Number 11-Cv.-8537 (DLC)

AMENDED

**COMPLAINT**

Under the
Civil Rights Act, 42 U.S.C. § 1983

Jury Trial: Yes x No ___
(check one)

V.

Defendant No. 1 NEW YORK CITY DEPARTMENT OF CORRECTION

Defendant No. 2 DORA SCHRIRO, Commissioner of New York City Department of Correction

Defendant No. 3 Evelyn Maribal, Warden, Otis Bantum Correctional Center (OBCC)

Defendant No. 4 ___

Defendant No. 5 ___

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/22/12

(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. No addresses should be included here.)

## I. Parties in this complaint:

A. List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff
Name Edward Contino
ID # 12-A-0323
Current Institution Sing Sing Correctional Facility
Address 354 Hunter Street, Ossining, N.Y. 10562

B. List all defendants' names, positions, place of employment, and the address where each defendant May be served. Make sure that the defendant)s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1 Name New York City Department of Correction Shield # ______

Where Currently Employed ______

Address 60 Hudson Street, 6th Floor, N.Y., N.Y. 10013-4393

______

Defendant No. 2 Name Dora Schriro Shield# ______

Where Currently Employed New York City Department of correction

Address 75-20 Astoria Boulevard

East Elmhurst, N.Y. 11370

Defendant No. 3 Name Evelyn Maribal Shield # ______

Where Currently Employed Otis Bantum Correctional Facility

Address 1600 Hazen Street

East Elmhurst, N.Y. 11370

Defendant No. 4 Name ______ Shield # ______

Where Currently Employed ______

Address ______

______

Defendant No. 5 Name ______ Shield # ______

Where Currently Employed ______

Address ______

______

## II. Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. In what institution did the events giving rise to your claim(s) occur? Otis Bantum Correctional Center (OBCC)

B. Where in the institution did the events giving rise to your claim(s) occur? In all areas of the Correctional Center

______

C. What date and approximate time did the events giving rise to your claim(s) occur? From my arrival at the OBCC up until the date of departure from OBCC

______

D. Facts: Please see attached six pages "STATEMENT OF FACTS"

What happened to you?

Who did what

Was anyone else involved ?

Who else saw what happened?

## III. Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. Impermissible punishment in vio lation of plaintiff's constitutional rights, statutory rights and human rights; Deliberate indifference to plaintiff's serious medical needs; negli- gence, and violation of minimum standards (overcrowding; denial of medical care and adequate treatment).

## IV. Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also know as grievance procedures.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?
Yes _x_ No ____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). Otis Bantum Correctional Center

B. Does the jail, prison, or other correctional facility where your claim(s0 arose have a grievance procedure?

Yes X No ____ Do Not Know ____

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes ____ No ____ Do Not Know X

If YES, which claim(s)? ____

D. Does the grievance procedure at the jail. prison, or other correctional facility where your claim(s) arose not cover some of your claim(s)?

Yes ____ No ____ Do Not Know X

If YES, which claim(s)? ____

E. Did you file a grievance at the jail, prison, or other correctional facility where your claim(s) arose?

Yes X No ____

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes ____ No ____

F. If you did file a grievance, about the events described in this complaint, where did you file the grievance? Grievance was placed inside of the Greivance Box @ OBCC

1. Which claim(s) in this complaint did you grieve? My greivance concerned both the overcrowd conditions at OBCC, denial of medical, and lack of laundry services at the OBCC

2. What was the result, if any? Nothing at all was done

3. What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process. I dropped the greivance in the box, spoke to area Captains, and the are Asiistant Deputy Wardens, but nothing has been done to remedy these issues. I have done all that can be done to try to bring about resolution through the greivance process, but all to no avail

G. If you did not file a grievance, did you inform any official of your claim(s)?

1. If YES, whom did you inform and when did you inform them? I have spoken to allCaptains , Deputy Wardens and correction officers on duty at the OBCC facility on a daily basis

2. If NO, why not? ___

I. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. When I submiitted my greivance, nothing was done. I spoke to the officers , various Captains and Deputy Wardens to no avail. I was often told "This is jail, you shouldn't have gotten arrested" and other comments to the same effect were made to (as detailedfur-ther in the attached STATEMENT OF FACTS

Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V. Relief:

State what you want the court to do for you. Award damages in the amount of fifty thousand dollars ($50,000.00)

## VI. Previous Lawsuits:

On these claims

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes ___ No X

B. If your answer to A is YES, describe each lawsuit in questions 1 through 7 on the next page. (If

there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format).

1. Parties to this previous lawsuit:

Plaintiff ________________________________

Defendants ________________________________

2. Court I(if federal court, name the district; if state, name the county) ____________

________________________________

3. Docket or Index number ________________________________

4. Name of Judge assigned to your case ________________________________

5. Approximate date of filing lawsuit ________________________________

6. Is the case still pending? Yes ____ No ____

If NO, give the approximate date of disposition ________________________________

7. What was the result of the case? (for example: Was the case dismissed? Was there judgment in your favor? Was the case appealed? ________________________________

________________________________

________________________________

On other claims

D. Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes ____ No __x__

E. If your answer to D is YES, describe each lawsuit in questions 1 through 7 on the next page. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format).

1. Parties to this previous lawsuit:

Plaintiff ________________________________

Defendants ________________________________

2. Court (if federal court, name district; if state court, name county) ____________

________________________________

3. Docket or Index number ________________________________

4. Name of Judge assigned to your case ________________________________

5. Approximate date of filing lawsuit ________________________________

6. Is the case still pending? Yes ____ No ____

If NO, give the approximate date of disposition ________________________________

7. What was the result of the case? (for example: Was the case dismissed? Was there judgment in your favor? Was the case appealed? ________________________________

________________________________

________________________________

Signed this 17 day of August, 20 12. I declare under the penalty of perjury that the foregoing is true and correct.

Signature of Plaintiff [signature]

Inmate Number 12-A-0323

Mailing address Sing Sing C.F.
354 Hunter Street
Ossining, N.Y. 10562

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under the penalty of perjury that on this 17 day of August, 20 12, I will deliver this complaint to prison authorities to be mailed to the Pro Se Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: [signature]

rev.09/04

RICHMOND UNIVERSITY MEDICAL CENTER
355 BARD AVENUE
STATEN ISLAND, NEW YORK 10310

## NON-INVASIVE CARDIOLOGY

Name: CONTINO,EDWARD
Loc/Svc : SLB4/ 4A44-B
DOB : 07/22/1965

Admit Date : 08/29/11

Med rec # : M011004425
Acct # : V00080577257
Requisition #: 11-0028081
Report #: 0902-0003
Discharge date : 09/02/11

### EEG REPORT

DATE: 8/31/11 EEG#: 11-372 AGE: M/46

DIAGNOSIS: DIZZINESS AND CHEST PAIN

HISTORY: HTN, HIGH CHOLESTEROL, DEPRESSION, ANXIETY

MEDICATIONS: SEROQUEL, AMBIEN, PAXIL, LOVENOX, XANAX, METOPROLOL, SIMVASTATIN, LISINOPRIL, MORPHINE

---

CONDITIONS DURING RECORDING: AWAKE AND DROWSY

ALPHA: 9 HZ 30 UV SYMMETRIC ACTIVITY ATTENUATED WITH EYES OPENED
BETA: NORMAL SYMMETRICALLY

ABNORMAL ACTIVITIES:
DROWSINESS: 5-6 HZ SYMMETRIC ACTIVITY
SLEEP:
HYPERVENTILATION: NO SIGNIFICANT CHANGE
PHOTIC STIMULATION: INDUCED NO DRIVE RESPONSE

IMPRESSION: NORMAL EEG, AWAKE AND DROWSY

INTERPRETED BY: S. SCHWARTZBERG, M.D.

| Dictated by: SCHWARTZBERG,STEVEN | Date/Time:08/31/11 1700 |
|---|---|
| Signed by: SCHWARTZBERG,STEVEN | Date/Time: 09/07/11 1748 |
| Transcribed by: MARION DAILEY | Date/Time: 09/02/11 0706 |

# STATEMENT OF FACTS

1. On September 3, 2011, plaintiff, Edward Contino, was admitted to the Otis Bantum Correctional Center (OBCC), Rikers Island, 1600 Hazen Street, East Elmhurst, New York 11370 and, due to a widely reported, but unremedied, overcrowdedness situation in both the housing areas and bullpen/medical department waiting areas, was there made to wait an inordinately lengthy period of hours on end and sometimes, but less frequently, days to see OBCC Medical staff.

2. The delays in receipt of medical screening, sick call, and medication delay and several instances of total deprivations of the same, occurred as a direct result of the fact that 60 inmates were typically and systematically housed in the dormitories that plaintiff were assigned to, namely 8-Upper and, thereafter, 6-Lower, which were designed and or designated to hold only 50 inmates.

3. The extra number of inmates culminated in severe overcrowding at the OBCC facility and caused the facility to withhold from plaintiff the constitutional rights to receive medical attention and services for his serious medical needs and laundry services, as further detailed herein below.

4. On the date of September 2, 2011, plaintiff was released from the hospital after having convalesced there for a period of five (5) days, after having been under the direct care of a physician, Dr. Steven Schwartzberg, M.D., 355 Bard Avenue, Staten Island, New York 10310, for ailings of hypertension, high blood pressure, depression, and anxiety. My symptoms were constant vertigo, headaches (daily) and fainting spells, as reflected in medical records pertaining to plaintiff.

*Exhibit "A"* (Medical Report of Plaintiff's Admission and Discharge from the hospital for the above-referenced maladies), attached.

5. Additionally, plaintiff had been admitted to the hospital for "chest pains" and "drows[iness]" on August 29, 2011. *Exhibit "A"* (above).

6. Plaintiff was only discharged from the hospital after he underwent an electroencephalogram (EEG) procedure, the necessary follow-up of which required plaintiff to have timely access to the OBCC facility's medical staff for medical screening (initial), sick call and medications for abatement or amelioration of all of the above-described medically diagnosed ailments, all of which have not only not ceased to date, but also have worsened to the point of plaintiff to have experienced debilitating pain due to the various delays and continued deprivations of access to the OBCC medical department's staff, which continued on a frequent basis -- *i.e.*, went on for days and, on at least two or three occasions, for whole weeks at a time.

7. Plaintiff was then on various medications for a confluence of maladies, both physical and mental, and all of which required, but did not receive, the attention of OBCC's medical department's staff, in furtherance of the medical care necessary to alleviate the pains and sufferings that plaintiff was enduring upon his discharge from the Richmond University Medical Center (a day before admission to OBCC).

8. Plaintiff's inability, due to the overcrowded conditions at OBCC, to access the medical department in a timely manner also resulted in many instances of denial of plaintiff's being seen at all by medical, due to the deprivation of sick call, tests and doctor visits.

9. Additionally, due to the OBCC staff's knowledge of the fact that the inmates at OBCC were not given the ability to access the facilities to launder clothing, and soap and buckets and places to hang the clothes were scarcely available (and more often than not) if not completely non-existent, whereas arguments and fistfights would break out over the mere mention of the lack or presence of these items, due to lack of sufficient space as a result of the overcrowding at OBCC.

10. Consequently, OBCC staff did not want, and actively protested having, such an abundant number of inmates inside of the medical staff's holding area, for the reason of stench and daily comments were made about the malodorous nature of the presence of inmates in any one area of the facility.

11. Comments were made to me by staff to the extent of ridiculing me for smelling badly and appearing with dirty clothing in the more sensitive areas as is the hospital area, e.g., plaintiff was told on many occasions to "go back to the housing area" because, the officers stated (humorously) "the hospital was not accepting any stinky dirtbombs today".

12. This was one of the most humiliating experiences that I had ever encountered in my entire life, because it was true, and nothing at all was being done about it by either of the defendants named herein, Commissioner Dora B. Schriro (who was familiar with these types of problems from her experience working as the director of the State Department of Corrections for the State of Arizona) or Warden Evelyn Maribal, both of whom had been presumably apprised of the overcrowded conditions of confinement at OBCC, and its leading to a situation of lack of medical attention and the lack of laundry services at this particular facility.

13. The most egregious statements that I heard directed towards me was when I was told by officers that I smelled of defecation and should not be let out of the cell for anything, not even for chow. On those days (approximating 15 times a week), I just did not get fed nor allowed to eat with others who were favored by the correction officers on duty. I endured all of this (in OBCC) until January 23, 2012.

14. The plaintiff's deprivation of access to laundry services, which were not ever made available to me during my entire four-month stay at the OBCC, was a circumstance that did not change throughout the incarceration of plaintiff at OBCC, and was due to the excess in number of inmates at the OBCC facility.

15. There was always a line of inmates queued up seeking to use the one sink for sixty inmates and 3 to 4 individuals would get to wash during the course of a single day, that was what prevented me from washing my clothes.

16. My medical condition of dizziness (especially when standing for lengthy periods of time) virtually eliminated the possibility for plaintiff to remain standing on that line, so that I was rendered by both my medical conditions and advanced age (47) unable to out-stand for longer periods of time than the non-ailing, younger individuals who would thus be permitted to usurp all of the time available for washing clothes as well as the waiting for the many, protracted and unnecessarily extended days or hours for the purpose of seeing medical staff.

17. Sheets, towels and pillowcases only were collected on a three-week interval basis, so that the cells reeked of urine and other foul, noxious odors, which due to the lack of clean linen, prevented the consumption of foods in the area when such opportunity, to participate in the serving of meals, was made available to plaintiff.

18. Plaintiff filed a formal grievance with the OBCC staff by filling out and dropping a bomb (request to be seen by a grievance clerk or have a hearing held to attempt a resolution of my legitimate grievance), which consists of filling out a pre-prepared form and placing it in the facility mailbox.

19. However, my mailings were not ever replied to or otherwise responded to or addressed. Plaintiff tried on a daily basis to endeavor speaking with the Captains and Deputy Wardens about both of these problems (with medical access and lack of laundry services) and the difficulties I was having with gaining access to both medical and laundry items to see medical wash my clothes, only to have my concerns met with derision, scorn and ridicule, which commentary was always to the effect of "You should not have gotten arrested" and come to jail if you wanted all of that, demonstrating that due solely to my status of incarceration (as a pretrial detainee) I deserved such treatment/lack of treatment.

20. Plaintiff avers that the situations complained of hereinabove were rendered especially acute when dizzy spells struck plaintiff when required to stand for prolonged periods of time; this invariably precipitated an onset of extreme drowsiness for which Plaintiff was not treated – and for which, due to the overcrowded conditions at OBCC, plaintiff was informed by the officials on duty that it was not possible to be seen by OBCC medical staff.

21. A repeated refrain was always given as an excuse for these deprivations, such as: "There is just too many of you criminals here at this facility for everybody to be taken to or seen by medical" (although nobody, including myself, was in OBCC for a conviction of a crime), so the punishments exacted against myself and others

at the OBCC was always befuddling to the mind, and plaintiff could only lament, in utter disbelief, about the precarious position that plaintiff was then involved in.

22. Further comments were uttered by the OBCC staff, to the effect that we all should try going to the "psych" to get resolution of the problems that we were constantly complaining about; but this adjunct of the medical department was even less available, because the manner of accessing a mental health practitioner was not ever explained to plaintiff; nor were rounds made by the mental health unit to discover the difficulties that I was, indeed, having with the nightmares, lack of sleep, and other inability on the part of plaintiff to sleep as a result of the noise resulting fitfulness (restlessness) and reluctance of many to sleep upon the soiled linen (towels, sheets and pillowcases, etc.) in the same dirty clothes.

23. At one point in time during the OBCC stay, plaintiff (during a search of the entire housing unit) made a snide comment about the several, unaddressed complaints of unavailability of medical treatment and dirty clothing/linen, and was immediately subjected to a wholly unjustified and unwarranted summary disciplinary measure/written infraction (disciplinary report), ultimately being taken to "The Hole" (otherwise known as "The Bing" or "The Pound") area of the facility for housing of inmates who have received sanctions for misconduct, but because all plaintiff had done was complain to the higher-ups who were present at such search of the housing area, they determined that the medical maladies (which plaintiff had been attempting daily to receive treatment for) required a discharge therefrom, which was done with a statement that "none of the stinkbombs will enter into or stay in the Pound just for complaining about the ill effects of OBCC's overcrowding, because the brass knows, and have been made aware of it, already." This meant <u>both</u> Ms. Maribal and Ms.Schriro approved all of the rights violations.



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
Pro Se Office

SCANNED

**To:** The Honorable Judge Denise L. Cote ,

**From:** R.Diaz, Pro Se Intake Clerk, Docket Services, Ext. 1177

**Date:** 8/30/2012

**Re:** **Contino v. New York City Department Of Corrections et al, 11-cv-08537-DLC**

The attached document, which was received by this Office on 8/22/12, has been submitted to the Court for filing. The document is deficient as indicated below. Instead of docketing the document for public access, it has been docketed as a court-view only docket entry. I am forwarding it to you for your consideration. See Fed. R. Civ. P. 5(d)(2)(B), (4).

( ) No original signature.

(X) No Affirmation of Service/ proof of service.

( ) Other:__________________________________________________

If you memo-endorse the filing, you do not need to return this memorandum to the Pro Se Office. Once your memo-endorsement is docketed and filed, all ECF users on the case will be notified.

In the alternative, please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

(X) **ACCEPT FOR FILING** ( ) **RETURN TO *PRO SE* LITIGANT**

Comments:

Denise Cote
United States District Judge
Dated: 9/5/12

____________________________
United States Magistrate Judge
Dated:

RECEIVED
SEP - 5 2012
CHAMBERS OF
DENISE COTE

2012 SEP -6 P 12: 11
SDNY PRO SE OFFICE
RECEIVED


Sing Sing Correctional Facility
354 Hunter St
Ossining N.Y 10562
Edward Centino 12A0323
PURPLE HEART
FOREVER USA
UNITED STATES
PITNEY BOWES
$ 00.00
02 1A
0004372495
AUG 20 2012
MAILED FROM ZIP CODE 10562
SING SING
CORRECTIONAL FACILITY
USDC SDNY
United States District Court
Chambers of
Judge Denise Cote
U.S. Court House
New York, New York 1000
Case # 11 cv 8537 (DLC)