```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
EDWARD CONTINO,                        :
                                       :
                 Plaintiff,            :
                                       :     11 Civ. 8537 (DLC)
     -v-                               :
                                       :        OPINION & ORDER
THE CITY OF NEW YORK; DORA SCHRIRO,    :
COMMISSIONER OF N.Y.C.D.O.C.;          :
EVELYN MARIBAL, WARDEN, OTIS BANTUM    :
CORRECTIONAL CENTER,                   :
                                       :
                 Defendants.           :
                                       :
-------------------------------------- X
```

APPEARANCES:

For the Plaintiff:

Edward Contino, pro se
Sing Sing Correctional Facility
354 Hunter Street, Ossining, NY 1056

For the Defendants:

Jeffrey Dantowitz
Office of Corporation Counsel of the City of New York
100 Church Street, Room 2-121
New York, NY 10007


DENISE COTE, District Judge:

     Edward Contino ("Contino") brings this action pro se pursuant to 42 U.S.C. § 1983 against the New York City Department of Corrections ("DOC"), Dora Schriro, Commissioner for DOC, and Evelyn Maribal, Warden of Otis Bantum Correctional Center ("OBCC").  Contino alleges that the defendants violated his constitutional rights by failing to provide access to

1

medical care and laundry services, and by retaliating against him for complaining of prison conditions.  Following discovery on the issue of whether the plaintiff has exhausted his administrative remedies, the defendants moved for summary judgment.  For the reasons that follow, the defendants' motion for summary judgment is granted.

BACKGROUND

The following facts are undisputed or taken in the light most favorable to the plaintiff.  Contino is an inmate at the Sing Sing Correctional Facility in Ossining, New York.  This lawsuit concerns the period from September 3, 2011 until January 23, 2012, when he was an inmate at OBCC in East Elmhurst, New York.

Immediately before Contino entered the OBCC, he had been treated at Richmond University Hospital for hypertension, high blood pressure, depression, and anxiety.  At the time, he exhibited symptoms of vertigo, headaches, and fainting spells.  Upon entering the OBCC, the plaintiff claims that he was placed in an overcrowded housing area.  Due to the overcrowding he was not provided access to adequate medical treatment.  Specifically, Contino claims that medical screenings took too long to complete or in some cases were unavailable.  Contino

also alleges that laundry services were effectively unavailable during the four months he resided in OBCC.

Shortly after arriving at OBCC, on September 5, Contino received the DOC Inmate Handbook, which describes the steps for filing and pursuing a grievance through DOC's Inmate Grievance Resolution Program ("IGRP").  According to IGRP procedures, in order to submit a grievance, an inmate may complete an "Inmate Grievance Interview Slip" or an "Inmate Grievance Form" and give it to an Inmate Grievance Resolution Committee member or Grievance Officer, or deposit it in a Grievance Box.  In the event that an inmate is unable to gain access to an official slip or form, he may write his initial grievance on an ordinary piece of paper.  If no response to the grievance is received within five business days, an inmate "may request a formal hearing."  Pursuant to more detailed description of the IGRP procedures contained in Directive 3375R-A ("Directive"), the request for a formal hearing is to be written on Form #7101R.[1] Thereafter, a dissatisfied inmate can appeal to the Warden, then to the Central Office Review Committee ("CORC"), and finally to the Board of Correction ("BOC").  The IGRP procedures also advise that "[i]f you do not receive a response to your grievance at any step of the Grievance Procedure within the time

---

[1] The Directive further provides that "[a]ny inmate confined to a cell must request Form #7101R from the Grievance Coordinator and follow this procedure."

3

period required . . . you may proceed to the next step of the Grievance Procedure." The Handbook informs inmates that "[m]ore detailed information on the time frames and process for all the steps in the procedure is included in [the Directive]," which is available at "the Grievance Office and the Law Library."

Additional procedures exist for inmates who wish to file complaints pertaining to "the delivery of health care services" in a correctional facility. The Charter of the City of New York vests the Department of Health and Mental Hygiene ("DoHMH") with authority to "promote or provide medical and health services for the inmates of prisons maintained and operated by the city." N.Y.C. Charter § 556(d)(8). DoHMH has issued policies and procedures that govern inmates' complaints about the delivery of medical, dental, and mental health care in the correctional facilities. These procedures provide that

> [p]atients are encouraged to discuss health care complaints or requests for a second opinion with their applicable health care provider. However, if a patient is dissatisfied with the outcome of this informal process, he/she must file a written complaint and place it in a "Second Opinion/Complaint Box."

According to the policy, a "Second Complaint/Complaint Box" is to be located in "every facility clinic and mini-clinic" in "an area which is visible and accessible to patients in the clinic." "Brochures which describe the available health services, how to access health services, how to file a complaint regarding health services (or appeal from a complaint determination) and/or a

4

request for a second opinion," are, according to the procedure, "distributed at intake by health care staff."  The parties have not submitted evidence of whether the OBCC followed these procedures for publicizing the DoHMH grievance procedure for complaints regarding health care services.

On October 8, 16, and 27, 2011, Contino filed three separate grievances with the OBCC.  The October 8 grievance, which was written on a plain piece of paper, complained of overcrowding, lack of medical care, and lack of laundry services.  The October 16 grievance, also written on a plain piece of paper, requested "a chance to speak to someone on [the] committee."  The grievance stated that Contino had "filed [a] grievance on 10/8 and [had] received no response."  It further provided that Contino had "spoken to several [Correction Officers] and Officers [Captains], Serges [sic], about [his] complaints to no avail."  Contino's October 27 grievance was written on an "Inmate Grievance Interview Slip" and again complained of the overcrowding in the facility.  Contino did not appeal any of his grievances to the Warden, CORC, or the BOC.[2]

---

[2] The defendants contend that Contino did not satisfy the requirement to request a formal hearing because his October 16 grievance -- if construed as a request for a formal hearing -- was improperly written on a plain piece of paper rather than on Form #7101R.  While the IGRP expressly permits an inmate to write his initial grievance on a plain piece of paper, it directs the inmate to convey his request for a formal hearing through Form #7101R.

5

Contino claims that, while he tried to proceed with the grievance process he was "placed in the Box," or disciplinary housing,[3] was denied meals and showers, denied access to the Law Library and barbershop, and given a disciplinary report. He believes these actions were taken in retaliation for his filing of grievances. Contino further contends that these actions and his fear of additional retaliation impeded his ability to pursue the grievance process. Contino also stated in interrogatory responses, however, that he believed he did not need to appeal to the Warden, CORC, or the BOC because he never received responses to his October 8, 16, and 27 grievances.

On the same day that Contino filed his third grievance, he executed the original complaint in this action. The complaint is dated October 27, 2011 and was received by the Clerk of Court on November 21. It was largely identical to a complaint filed in Patterson v. City of New York, No. 11 Civ. 7976 (DLC) on November 4.[4] This Court stayed the Contino action pending a decision on the motion to dismiss the Patterson action and then granted Contino leave to amend his complaint in accordance with

---

[3] The defendants have submitted Contino's Inmate Movement History log (the "Log"), which is generated by DOC's Inmate Inquiry System. The Log indicates that during his stay at OBCC, Contino was at all times housed in a general population area, and was never in disciplinary housing.

[4] The Patterson and Contino complaints were two of eight substantially similar complaints filed between November 2011 and June 2012 to complain about conditions at OBCC.

the August 9, 2012 Opinion issued in Patterson.  Patterson v. City of New York, et al., 11 Civ. 7976, 2012 WL 3264354 (S.D.N.Y. Aug. 8, 2012).  Contino's Amended Complaint was received on November 7.  A motion to dismiss was denied on February 7, 2013.  The defendants then moved for summary judgment on April 12, on the ground that Contino failed to exhaust all administrative remedies prior to filing suit.  The motion was fully submitted on May 23.

DISCUSSION

    Summary judgment may not be granted unless the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a dispute as to a material fact, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denial" of the movant's pleadings.  Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 586 n.117 (1986); Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010). Nor can a non-movant "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Baines, 593 F.3d at 166.

The Prison Litigation Reform Act ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq., requires a prisoner to exhaust all available administrative remedies before he can bring a civil rights action pursuant to 28 U.S.C. § 1983. See 42 U.S.C. § 1997e(a);[5] Woodford v. Ngo, 548 U.S. 81, 93 (2006); Hernandez v. Coffey, 582 F.3d 303, 305 (2d. Cir. 2009). "[F]ailure to exhaust is an affirmative defense in a lawsuit governed by the PLRA." Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). "Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Hernandez, 582 F.3d at 305 (quoting Woodford, 548 U.S. at 90).

---

[5] The PLRA's exhaustion requirement states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

8

Where the prison's procedures permit appeal of an adverse ruling, to exhaust the available procedures a prisoner must file an appeal.  Woodford, 548 U.S. at 90.

"Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'"  Hernandez, 582 F.3d at 305 (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).  "[R]etaliation claims fit within the category of inmate suits about prison life, and therefore must be preceded by the exhaustion of state administrative remedies available."  Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (citation omitted).  Although retaliation claims are subject to the PLRA's exhaustion requirement, a defendant may be estopped from asserting the plaintiff's failure to exhaust as a defense if the defendant's retaliatory acts prevented the plaintiff from exhausting administrative remedies.  Id.

In Hemphill v. New York, the Second Circuit set forth a three-part inquiry that courts should use when an inmate "plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA."  380 F.3d 680, 686 (2d Cir. 2004).  First, the court must investigate "whether administrative remedies were in fact 'available' to the prisoner."  Id. (citation omitted).  The test for the availability of

administrative remedies is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." Id. at 688 (citation omitted). In determining whether administrative remedies are available to a particular inmate, a court should also "be careful to look at the applicable set of grievance procedures, whether city, state, or federal." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (citation omitted). Administrative remedies are not available "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736 (2001). If a court determines that administrative remedies were available, it should also "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Hemphill, 380 F.3d at 686. Finally, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (citation omitted).[6]

---

[6] The Second Circuit has declined to decide whether the doctrines of estoppel and special circumstances described in Hemphill

It is undisputed that the plaintiff did not properly exhaust his administrative remedies with respect to any of the claims he now raises.  DOC's grievance procedure lays out a five-step process for inmates to follow in order to have their grievances resolved.  After filing an initial grievance slip, an inmate may request a formal hearing, appeal to the Warden, appeal to the CORC, and finally, appeal to the BOC.  At most, Contino pursued only the first two steps of the grievance procedure with respect to his claims of denial of laundry services and medical care.[7]  Contino completed none of the steps of the grievance procedure with respect to his claim of retaliation.  Thus, unless one of the equitable exceptions to the exhaustion requirement is satisfied, Contino's suit is barred by his failure to exhaust administrative remedies.

Contino's submissions suggest two reasons why his failure to exhaust administrative remedies should be excused.  First, Contino argues that because he was placed in disciplinary housing and denied certain privileges and essentials while he

---

remain viable in light of Woodford, 548 U.S. at 90.  See Amador v. Andrews, 655 F.3d 89, 102-103 (2d Cir. 2011) (collecting cases).  Because this action must be dismissed under the standards described in Hemphill it is also unnecessary to decide here the extent to which Hemphill survives Woodford.

[7] It is unnecessary to decide whether the plaintiff failed to exhaust his administrative remedies by improperly submitting his request for a hearing on a plain piece of paper rather than the designated form.

was trying to pursue the IGRP procedures, he should be relieved of the obligation to exhaust administrative remedies. This argument is construed as raising both the issue of whether DOC's grievance procedures were functionally available to the plaintiff, and the issue of whether the defendants should be estopped from asserting the plaintiff's failure to exhaust. Second, the plaintiff argues that the IGRP procedures did not "require" him to appeal his grievances given that he never received a response.[8]  Because neither of the plaintiff's arguments justifies an exception to the PLRA's exhaustion requirement, the plaintiff's claims must be dismissed due to the plaintiff's admitted failure to exhaust his administrative remedies.

Availability of Grievance Procedures

Contino does not dispute that DOC had a grievance procedure in place and that it was generally available to inmates. Procedures that are literally available may become effectively or functionally unavailable to an inmate if defendants take actions to render them so. In such cases, the test of availability is an "objective one." Hemphill, 380 F.3d at 688.

---

[8] This second argument does not appear in the plaintiff's opposition to the defendants' motion for summary judgment, but is included in the plaintiff's responses to the defendants' interrogatories.

It asks whether "a similarly situated individual of ordinary firmness" would "have deemed them available."  Id.

There is no evidence that DOC's grievance procedure was rendered effectively unavailable to the plaintiff as a result of the defendants' actions.  There is no better proof of this point than the fact that the plaintiff himself submitted three grievances in the month of October.  From the sequence of events, it appears that Contino chose to file this action rather than completing the administrative appeals process.  Without reaching the issue of whether a prematurely filed action may continue if a plaintiff does subsequently exhaust all administrative remedies, it is certainly the case that the filing of a premature action does not relieve the plaintiff of the burden to administratively exhaust his grievances.

Contino appears to argue, however, that the otherwise available grievance procedures were rendered unavailable by the fact that he was placed in disciplinary housing and denied certain privileges and essentials.  His conclusory assertion in this regard is insufficient to permit a determination that DOC's grievance procedure was functionally unavailable to him.  He does not explain when he was placed in disciplinary confinement or for how long.  Moreover, inmates in disciplinary housing may continue to pursue the grievance process.  DOC's handbook expressly contemplates that inmates who are confined to their

13

cells will be able to participate in the grievance process. For instance, the Directive provides that "any inmate confined to a cell" who wishes to request a formal hearing "must request Form #7101R from the Grievance Coordinator." Similarly, the IGRP procedure indicates that while an inmate wishing to "effect an appeal" should ordinarily go to the Grievance Office "to sign and submit the appropriate appeal form," "[a]ny inmate confined to a cell must request the appropriate appeal from the Grievance Coordinator." Contino does not claim that he made any such requests or that those requests were ignored. Although the plaintiff claims that he feared further disciplinary actions would be taken against him if he continued to pursue the grievance procedure, he identifies no basis on which to find that his fear was reasonable. Under the circumstances, an inmate of ordinary firmness would be expected to have made an effort to continue the grievance procedure even while confined in disciplinary housing.

Estoppel

Although a theoretically distinct inquiry, the question of whether the defendants' actions estop the defendants from asserting the plaintiff's failure to exhaust as an affirmative defense often overlaps with the question of whether grievance procedures are functionally available to the inmate. See Giano v. Goord, 380 F.3d 670, 677 n.6 (2d Cir. 2004). Such is the

case here.  In general, defendants may be estopped from relying on a plaintiff's failure to exhaust his administrative remedies if the defendants misled, threatened, or otherwise deterred the plaintiff from completing the grievance process.  See, e.g., Macias v. Zenk, 495 F.3d 37, 44-45 (2d Cir. 2007); Hemphill, 380 F.3d at 688.

On the present record, there is no basis to conclude that the defendants are estopped from relying on this affirmative defense.  The plaintiff's sole support for this estoppel argument comes from the single conclusory statement in his opposition that "while trying to proceed with [the] process" he was "placed in the box," "denied basic essentials" including, "meals, law library, barbershop, showers, etc.," and given a disciplinary report.  Again, he does not explain when this occurred.[9]  His opposition also states that his fear of further retaliation led him to forego the remainder of the grievance process and proceed directly to court.  An inmate's fear that disciplinary actions will be taken against him if he proceeds with a grievance process must, at a minimum, be reasonable in

---

[9] The defendants have submitted a disciplinary report dated November 7, 2011.  This may be the disciplinary report to which the plaintiff refers.  The defendants deny, however, that the plaintiff was ever placed in disciplinary housing and the plaintiff himself does not state when this occurred.  In his amended complaint, the plaintiff states that he was taken "to 'The Hole'" but released from it because of his "medical maladies."

order to relieve the plaintiff of his obligation to exhaust. Cf. Tuckle v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) (a court must find that the threat of retaliation would deter a reasonable inmate of ordinary fortitude).  Contino's conclusory assertion that he feared retaliation if he completed the grievance process is insufficient to excuse his obligation to exhaust the administrative grievance process.  For this reason as well, Contino was required to exhaust his administrative remedies.

Obligation to Appeal

Contino next claims that because the IGRP procedures do not require an inmate to appeal a grievance when no response has been received, he did not have to take any appeals in order to properly exhaust his administrative remedies.  Contino's argument is construed as raising two distinct issues: 1) whether, because DOC does not require inmates to pursue each step of the IGRP procedure, an inmate who does not take all the steps can nonetheless be said to have exhausted his administrative remedies, and 2) whether plaintiff's "reasonable" misunderstanding of the grievance procedures excused his failure to exhaust them.  However construed, the plaintiff's argument conflates the IGRP procedures and the PLRA's exhaustion requirements.

It is true that DOC's Inmate Handbook, which lays out the IGRP procedure, does not require an intimate to pursue every step of the process.  The Handbook reads as follows:

How to Submit a Grievance

Complete an "Inmate Grievance Interview Slip" (Form #143) or an "Inmate Grievance Form" (Form #7101, which are available through Inmate Grievance Resolution Committee ["IGRC"] staff members and office, Housing Area Officers, Law Library and the Counseling Office.

Submit the grievance by giving it to an Inmate Grievance Resolution Committee staff member, dropping the grievance in the Grievance Box or bringing it to the Grievance Officer.

In the event you cannot access the Grievance form (Form #7101), a complaint can be write [sic] on any paper and will be transferred onto the appropriate form when Grievance personnel interview you.
. . . .

How the Grievance Procedure Works

Step 1: The IGRC will investigate and try to resolve your grievance without a hearing.  If you are not satisfied with the informal resolution, or do not receive a response to your grievance from the IGRC within five days (excluding weekends and holidays), you <u>may</u> request a formal hearing.

Step 2 -- Warden Level: If you are not satisfied with the determination from a hearing, you <u>may</u> appeal to the Warden.

Step 3 -- Central Office Review Committee (CORC): If you are not satisfied with the Wardens decision, you <u>may</u> appeal to the CORC.

Step 4 -- Board of Correction (BOC): If you are not satisfied with the CORC decision, you <u>may</u> appeal to the BOC.

> Additional Information About the Grievance Procedure in Directive 3375R
>
> <u>If you do not receive a response to your grievance at any step of the Grievance Procedure within the time required in Directive 3375R-A, you may proceed to the next step of the Grievance Procedure</u>. . . .

(Emphasis supplied.)  As this language demonstrates, the grievance procedure is voluntary -- no inmate is required to complete the grievance procedure.

But the fact that an inmate's participation in the IGRP procedure is voluntary says nothing about whether that inmate, after having chosen not to avail himself of administrative remedies, can nonetheless proceed to court without beginning and completing that process.  "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." <u>Woodford</u>, 548 U.S. at 90.  Thus, if an agency <u>permits</u> an appeal, the PLRA's exhaustion requirement obligates the inmate to take the appeal.  Nor does plaintiff's "misunderstanding" excuse his failure to exhaust.  The plaintiff's misunderstanding is not a misunderstanding of the IGRP procedures but of the PLRA's exhaustion requirement.  A plaintiff's failure to understand the contours of the PLRA is not a special circumstance excusing compliance with the PLRA's exhaustion requirement.  In sum, the

18

plaintiff was required to appeal his grievances even though he had received no response, and he has identified no basis to excuse his failure to exhaust his administrative remedies.

CONCLUSION

    The defendants' April 12 motion for summary judgment is granted. The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          August 7, 2013

_____
DENISE COTE
United States District Judge

COPIES MAILED TO:

Edward Contino
12-A-0323
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562